**Frank ADAMS, et al., Plaintiff,**

v.

**PENNSYLVANIA CHIROPRACTIC SOCIETY, et al., Defendants.**

Civ. A. No. 83–0315.

United States District Court, M.D. Pennsylvania.

March 25, 1983.

Henry B. Rothblatt, Fort Lauderdale, Fla., Joseph J. Malatesta, Jr., Malatesta & Hawke, Harrisburg, Pa., for plaintiff.

James Kutz and Robert Hoffman, Deputy Attys. Gen., Harrisburg, Pa., for defendants.

MEMORANDUM

RAMBO, District Judge.

On March 9, 1983, the plaintiffs, graduates of ADIO Institute of Straight Chiropractic, Inc. (hereinafter ADIO), filed a complaint against various defendants who

---

**2.** It should be noted that the amount plaintiff is required to pay its beet growers, as a direct cost, must be subtracted from the contract price of each contract to determine plaintiff's profit under each such contract. *See Famous* *Knitwear Corp., supra.* Therefore, evidence reflecting such payments would be admissible for the purpose of proving plaintiff's expected profit under each contract.

are involved in the controversy surrounding the state's approval of ADIO, the licensing of ADIO's graduates or the funding of students attending ADIO.[1] In addition to the complaint, two subgroups of the plaintiffs have moved for a temporary restraining order and a preliminary injunction against one defendant, The Pennsylvania State Board of Chiropractic Examiners. The subgroups of plaintiffs are those who graduated from ADIO before June 17, 1982, but passed the State examination after June 17, 1982, and those who graduated from ADIO and passed the State examination after June 17, 1982. The TRO and the preliminary injunction seek to require the Pennsylvania State Board of Chiropractic Examiners to immediately issue licenses to practice chiropractic to the subgroups of plaintiffs defined above. On March 16, 1983 after notice to the attorney representing the State Board, this court held a hearing on the motion for the TRO.

▓▓ At the hearing the court was informed that the identical issue presented in the motion for a TRO is already before the Honorable David W. Craig, Judge, Commonwealth Court of Pennsylvania, in *Brady v. Commonwealth of Pennsylvania, State Board of Chiropractic Examiners*, No. 1921 C.D. 1982. The State Board argues that in light of the pending Commonwealth Court action this court should abstain.

The litigation before Judge Craig seeks the following relief:

WHEREFORE, Petitioners respectfully pray that this Honorable Court order that those graduates of ADIO who complete and pass the November, 1982 licensure examination, or any other licensure examinations given by Respondent State Board, be granted licenses to practice chiropractic, and provide such other and further relief as to the Court appears just and proper in the circumstances. Amended Petition for Review at 10, No. 1921 C.D. 1982 (Oct. 12, 1982).

The relief sought in Commonwealth Court is substantially identical to the relief sought in the motion for a temporary restraining order in this court. Both cases would, if successful, compel the licensing of ADIO graduates who successfully pass "any ... licensure examinations given by Respondent State Board, ..." The parties in the *Brady* case have completed the pleadings and Judge Craig has scheduled an evidentiary hearing for Monday, March 28, 1983. *Brady v. Commonwealth of Pennsylvania, State Board of Chiropractic Examiners,* No. 1921 C.D. 1982 (Feb. 14, 1983).

The United States Supreme Court has identified a number of circumstances when abstention is appropriate. One set of facts calling for abstention was announced in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The *Burford* case involved issues of state policy and procedures in regulating intrastate oil and gas production. *Id.* at 316–17, 63 S.Ct. at 1098–99. Justice Black, relying on the decision in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), said:

The State provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here. *Cf. Matthews v. Rodgers,* 284 U.S. 521 [52 S.Ct. 217, 76 L.Ed. 447]. Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand. 319 U.S. at 333–34, 63 S.Ct. at 1107.

---

1. An amended complaint was filed on March 10, 1983 to correct defects in the original complaint.

The comity analysis is also utilized by Justice Douglas in his concurring opinion. *Id.* 319 U.S. at 334–35, 63 S.Ct. at 1107–1108. *See Pennsylvania v. Williams,* 294 U.S. 176, 185, 55 S.Ct. 380, 385, 79 L.Ed. 841 (1935).

The *Burford* theory of abstention was qualified and explained by the Court in *Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Justice Brennan, writing for the Court said:

> In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Id.* at 814, 96 S.Ct. at 1245.

*See Pike County Light and Power Co. v. Pennsylvania Public Utility Commission,* No. 82–1608 at p. 6 (M.D.Pa. Jan. 13, 1983).

The present case falls within the *Burford* abstention theory. The Commonwealth of Pennsylvania has in place an administrative process by which practitioners of chiropractic are licensed. *See* 63 P.S. § 601 et seq. Those applicants who are denied licenses can appeal to the Commonwealth Court. *See* 42 Pa.C.S.A. § 761. The Commonwealth has a strong interest in establishing a coherent policy and procedure by which to protect its citizens from the dangers of unqualified chiropractic practice. *See Eatough v. Albano,* 673 F.2d 671, 676 (3d Cir. 1982); *Davis v. Board of Medical Examiners,* 497 F.Supp. 525, 528 (D.N.J.1980). In furtherance of the procedures and policy outlined in the statutes, the Commonwealth Court, Judge Craig presiding, has considered matters relating to previous graduates of ADIO and their ability to take the state licensing examination. *Smith v. State Board of Chiropractic Examiners,* No. 485 C.D. 1981 (Mar. 27, 1981); *Mittica v. State Board of Chiropractic Examiners,* No. 2446 C.D. 1981 (Oct. 15, 1981); *Zivanovitch v. Commonwealth of Pennsylvania, State Board of Chiropractic Examiners,* No. 844 C.D. 1982 (Apr. 27, 1982). Judge Craig, at

this very date, has before him the *Brady* case, *see supra* at 435, which is identical to the case before this court.

The existence of the *Brady* case greatly strengthens the reasons for this court abstaining on the motion for a temporary restraining order. The *Brady* case is scheduled for an evidentiary hearing before Judge Craig on Monday, March 28, 1983. *Brady v. Commonwealth of Pennsylvania, State Board of Chiropractic Examiners,* No. 1921 C.D. 1982 (Feb. 14, 1983). The relative progress which has been made in the duplicative state and federal lawsuits is a factor considered by the Supreme Court in analysis of the facts in *Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 820, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976). The progress of the actions was characterized as the "priority" element of the *Colorado River* test. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, ——, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983). In *Colorado River* the federal suit had been filed prior to the state action, but only the complaint and the motion to dismiss had been filed in federal court. 424 U.S. at 820, 96 S.Ct. at 1247. The lack of any proceedings in the federal court was an element in favor of abstention. *Id.,* —— U.S. at ——, 103 S.Ct. at 939–40. The configuration of the duplicative litigation in the present case is as much in favor of abstention as reality is apt to provide. The state suit is ready for trial on March 28, 1983. The motions and complaint were filed in this court on March 9 and 10, 1983. The priority factor from *Colorado River* supports abstention.

The Supreme Court has struggled in recent years with another aspect of the abstention doctrine which must be considered in the instant case. The Court in *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), raised the question of whether federal or state law provides the rule of decision on the merits. *Id.* at 667, 98 S.Ct. at 2559 (Blackmun, J. concurring in the judgment; *Id.* at 668–677, 98 S.Ct. at 2560–2565 (Brennan, J., dissenting). *See* —— U.S. at ——,

103 S.Ct. at 941–42. In the instant case the state and the federal courts have concurrent jurisdiction over any claims under the federal constitution. *DiAntonio v. Pennsylvania State University,* 455 F.Supp. 510, 512 (M.D.Pa.1978). This court would then arguably exercise pendent jurisdiction over any state statutory or state constitutional claims. 1 Fed.Proc., L.Ed. § 1:20 (1981). This alignment of jurisdiction can be contrasted with the jurisdiction in *Cone Memorial* and *Calvert.* In *Cone Memorial* the state and federal courts had concurrent jurisdiction over the issue involved. —— U.S. at ——, 103 S.Ct. at 941–42. In *Calvert* there were state securities laws, a state common law fraud action, and an allegation based on the Securities Act of 1933. 437 U.S. at 658, 98 S.Ct. at 2555. The federal and state court would have had concurrent jurisdiction over those claims. There was, however, a claim under the Securities Exchange Act of 1934 and 15 U.S.C. § 78aa granted exclusive jurisdiction to enforce the 1934 Act to the federal district courts. 437 U.S. at 658, 98 S.Ct. at 2555. The Supreme Court in *Calvert* indicates in dicta that a stay of the claim over which the federal court had exclusive jurisdiction would be improper. *Id.* at 666–67, 98 S.Ct. at 2559–60. It is on the exclusive jurisdiction aspect that the dissent in *Calvert* is most adamant about the federal courts unflagging obligation to exercise the jurisdiction given them. *Id.* at 669, 98 S.Ct. at 2560.

 The Court appears to conceptualize a continuum with cases involving an issue over which the federal court has exclusive jurisdiction on one end (i.e. *Calvert* ) and cases involving an issue over which the state court has exclusive jurisdiction on the other end. A case such as *Cone Memorial* where concurrent jurisdiction exists on all issues would be the middle ground. The present case lies somewhere between *Cone Memorial* and the situation where the state court has exclusive jurisdiction. This court and the state court have concurrent jurisdiction over the federal constitutional claims. 455 F.Supp. at 512. The claims under state law or the state constitution would appear to be cognizable in this court

under the doctrine of pendent jurisdiction. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Pendent jurisdiction is a discretionary doctrine. *Id.* at 726, 86 S.Ct. at 1139. In a sense this court's jurisdiction over the state claims is secondary to the state court's. The state claims could not be brought in this court in their own right. These are perhaps the rare circumstances the Court had in mind when it said "Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender ... the presence of federal-law issues must always be a major consideration weighing against surrender." —— U.S. at ——, 103 S.Ct. at 942 (footnote omitted). The "source-of-law factor" in this case weighs in favor of abstention. *See id.*

The *Burford* abstention doctrine, the priority factor from the *Colorado River* analysis, and the source-of-law factor from *Calvert* all point in favor of abstention. This court will abstain from issuing a temporary restraining order against the State Board of Chiropractic Examiners as requested by the plaintiffs.

The court still has before it the motion for a preliminary injunction against the State Board. The parties will be given seven (7) days to file briefs on the questions of:

(1) Whether a hearing on the motion for a preliminary injunction is necessary in light of this decision; and,

(2) Whether the other defendants named in the complaint can be represented and allowed to present information at any hearing on the preliminary injunction.